UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PCCP LLC, REDWOOD CAPITAL FINANCE COMPANY,**<br><br>     **Plaintiffs,**<br><br>     **v.**<br><br>**ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,**<br><br>     **Defendant.** | **Case No.: 12-CV-0447 YGR**<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

This is an insurance coverage action. Plaintiffs PCCP, LLC ("PCCP") and Redwood Capital Finance Company ("Redwood") (collectively, "Plaintiffs") are in the real estate business: PCCP as an investor, Redwood as a lender. Defendant Endurance American Specialty Insurance Company ("Defendant" or "Endurance") provided Plaintiffs with professional and executive liability insurance under three consecutive one-year policies beginning in 2007. This lawsuit centers on the terms of the most recent policy which covered the period from March 18, 2009 to March 18, 2010. The following facts are undisputed: One, the policy is a "claims-made-and-reported" policy, as opposed to an "occurrence" or general "claims-made" policy. Two, the policy expired without renewal on March 18, 2010. Three, the policy provided a sixty-day "Automatic Extended Reporting Period" ("AERP") in the event of non-renewal, and the AERP went into effect when the policy expired on March 18, 2010. Four, on November 19, 2009—that is, during the

policy period—PCCP and Redwood were named as third-party counterclaim defendants in a lawsuit in Hawaii state court arising out of a failed real estate development in that state. And five, though Plaintiffs were named in the Hawaii lawsuit in November 2009, and their policy with Endurance ended March 18, 2010, they did not submit their claim for the Hawaii lawsuit to Endurance until April 21, 2010.

On June 7, 2010, Endurance denied coverage, stating, inter alia, that the claim was untimely filed. This lawsuit followed. The dispositive legal question in the case is whether the coverage afforded by the AERP encompasses the subject claim, which was "made" within the policy period but only "reported" during the AERP.

Having carefully reviewed the parties' papers and the record before it, and having had the benefit of oral argument, the Court holds that the subject claim was not timely submitted, and therefore, not covered under the policy. Accordingly, the Court **GRANTS** Endurance's motion for summary judgment and **DENIES** Plaintiffs' motion, as set forth herein.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted.

### A. THE POLICY

Endurance issued the subject Policy, a Professional and Executive Liability Insurance Policy bearing Policy No. PCL10100490700, to PCCP for the policy period of March 18, 2009 to March 18, 2010. PCCP was the named insured on the policy and Redwood was an additional insured.

The policy had a $5,000,000 aggregate liability limit, subject to a $150,000 self-insured retention. Joint Ex. A (Dkt. No. 52-2 ["Policy"]) at END_000457. The "Insuring Agreements" of the Policy's Management Liability Coverage Part provided, in pertinent part:

> The Company [i.e., Endurance] shall pay on behalf of the Insured Organization [i.e., PCCP] all Loss resulting from any Claim . . . first made against [PCCP] and reported to [Endurance] in writing during the policy period or any applicable Extended Reporting Period for any Wrongful Act.

Policy at END_000482.

Here, in pertinent part, is the claims reporting process set forth in the Policy:

> As a condition precedent to coverage under this Policy, [PCCP] shall provide [Endurance] written notice of any Claim and any Compliance Request made against any Insured as soon as practicable after the President, Chief Executive Officer, Chief Financial Officer, General Counsel, Risk Manager or Director of Human Resources of the Named Insured [i.e. PCCP] becomes aware of such Claim or Compliance Request, but in no event later than: (1) the expiration date of this Policy; (2) the expiration date of the Automatic Extended Reporting Period; or (3) the expiration date of the Optional Extended Reporting Period, if purchased.

Policy § IX.A, at END_000476. It is undisputed that PCCP did not purchase the Optional Extended Reporting Period.

The policy provision entitled "Automatic Extended Reporting Period," set forth in section X.A, provided:

> If the Company or the Named Insured shall cancel or refuse to renew this Policy, then the Company shall provide the Named Insured an automatic and noncancellable extension of this Policy, subject otherwise to its terms, Limits of Liability, exclusions and conditions, to apply to Claims first made against the Insured during the sixty (60) days immediately following the effective date of such nonrenewal or cancellation, for any Wrongful Act committed before the effective date of such nonrenewal or cancellation and after the Retroactive Date (if any) and otherwise covered by this insurance. This Automatic Extended Reporting Period shall terminate after sixty (60) days from the effective date of such nonrenewal or cancellation.

Policy § X.A, at END_000477.

**B.   CLAIMS "MADE" IN THE UNDERLYING HAWAII ACTION**

The claim at issue arises from an action involving Stanford S. Carr, a real estate developer in Hawaii. Carr controlled the right to develop a real estate project in Kona, Hawaii, above the Kaloko Heights Industrial Park. Carr and his company formed SCD Kaloko, LLC to act as the developer, sponsor, and administrative member of a new entity, Kaloko Heights Associates, LLC ("KHA"). PCCP and other investors formed a separate entity, PCCP/Strand LLC, which became the managing member of KHA.

In 2005, KHA borrowed money from Redwood to develop the Kaloko Heights project. Carr individually guaranteed the Redwood loan. The loan ultimately went into default and Redwood commenced a foreclosure proceeding captioned *Redwood Capital Finance Co., LLC v. Kaloko Heights Assocs., LLC, et al.*, Civil Case No. 9-1-333K in Circuit Court in the Third Circuit of

1 Hawaii ("the Hawaii Action"). The Hawaii Action included a claim by Redwood against Carr
2 based upon his personal guarantee of the loan. On November 19, 2009, Carr filed counterclaims
3 against Redwood and PCCP in the Hawaii Action. Those counterclaims constitute "the claim" at
4 issue in this action.

### C.  CLAIM "REPORTED" AFTER NON-RENEWAL OF THE POLICY

On March 11, 2010, PCCP's then-insurance broker, a representative of Arthur J. Gallagher & Co. ("Gallagher") contacted PCCP by email. Declaration of Enrique Marinez (Dkt. No. 52-8 ["Marinez Decl."]), Ex. K., at PCCP-Redwood000245-246.[1] The email identified Gallagher as the servicing broker on the Policy until the end of the policy period, March 18, 2010, at which point PCCP's new broker, Aon Financial Services Group ("Aon"), would succeed. *See id.* at PCCP-Redwood000245. The email stated that its purpose was to make PCCP "aware of certain conditions in the expiring policy." *Id.* It further stated: "This is a Claims Made and Reported Policy.[2] Coverage is for Loss resulting from Claim [*sic*] first made against the insured and reported to the Company in writing during the policy period or any applicable Extended Reporting Period. Additional terms per policy." *Id.* The email also stated that the policy had an AERP "which allows for the reporting of Claims first made against the insured during the sixty (60) days immediately following the effective date of nonrenewal for any Wrongful Act committed before the effective date of such nonrenewal and after the Retroactive Date (if any)." *Id.* These statements closely track the language of Sections IX.A and X.A of the policy itself, as set forth above.

---

[1] Plaintiffs object to the Marinez Declaration, its supporting exhibits, and Defendant's separate statement of putatively "undisputed" facts on admissibility and relevance grounds. Pls. MSJ (Dkt. No. 54) at 20-22. As set forth in detail in Section III.B.1, *infra*, the Court does not consider the facts offered therein to interpret the language of the policy. The Court provides the facts here for background only.

[2] "California law distinguishes between: (1) *occurrence* policies, in which coverage is triggered by events that occur within the policy period, even if they lead to claims years after the policy period; and (2) *claims-made* policies, in which coverage is determined by claims made within the policy period, regardless of when the events that caused the claim to materialize first occurred." *Pension Trust Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (emphasis supplied). "Claims-made policies can be further classified as either *claims-made-and-reported* policies, which require that claims be reported within the policy period, or *general claims-made* policies, which contain no such reporting requirement." *Id.* (emphasis supplied).

4

Also on March 11, 2010, Steve Towle ("Towle"), a PCCP executive, asked Aon to "advise" as to the email from Gallagher. *Id.*

On March 15, 2010, Aon emailed Towle and another PCCP executive to request their "assistance in reaching out to the partners to do a final query that there are no additional Claims . . . that should be noticed to Endurance." Marinez Decl., Ex. L. Aon's email also advised PCCP that if PCCP wanted to purchase a renewal policy with a higher insurance limit of $15 million, Endurance would "require a warranty . . . regarding knowledge of any circumstance that could give rise to a Claim." *Id.*

On March 17, 2010, Aon, on behalf of PCCP, sent notice to Endurance of eight separate claims. Marinez Decl., Exs. N, O. No claim based on the Hawaii action was among them. *See id.*

On March 18, 2010, the policy period ended and the policy expired without renewal, which caused the sixty-day AERP to go into effect.

Thirty-four days later, on April 21, 2010, Aon, on behalf of PCCP, reported to Endurance the subject claim based on Carr's counterclaim in the Hawaii Action. On June 7, 2010, Endurance denied coverage. The parties in the Hawaii Action, including PCCP, Redwood, and Carr, ultimately reached a settlement resolving all their claims and counterclaims.

## II. LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

5

## III. DISCUSSION

In this diversity action, California law governs the question of whether the subject policy provides coverage. *See Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008).

### A. CALIFORNIA LAW GOVERNING INTERPRETATION OF INSURANCE CONTRACTS

In insurance cases, California courts "generally resolve ambiguities in favor of coverage." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (Cal. 1990). Moreover, California courts generally interpret the coverage clauses of insurance policies broadly, to protect "the objectively reasonable expectations of the insured." *Id.* "The California Supreme Court has established a three-step process for analyzing insurance contracts with the primary aim of giving effect to the mutual intent of the parties." *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 925 (9th Cir. 2000) (citing *AIU*, 51 Cal. 3d at 821-23). The Ninth Circuit summarizes California's three-step analysis thus:

> The first step is to examine the "clear and explicit meanings" of the terms as used in their "ordinary and popular sense." In assessing the terms' meanings, we may not take individual terms out of context: Language in a contract must be construed in the context of that instrument as a whole . . . and cannot be found to be ambiguous in the abstract. Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.
> If (and only if) a term is found to be ambiguous after undertaking the first step of the analysis, the court then proceeds to the second step and resolves the ambiguity by looking to the expectations of a reasonable insured. Under California law, an insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable.
> Finally, if the ambiguity still remains, it is construed against the party who caused the ambiguity to exist. In the insurance context, this is almost always the insurer, as the California Supreme Court has held that ambiguities are generally resolved in favor of coverage, and that the courts are to generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.

*Id.* at 925-26 (citations and internal quotation marks omitted).

### B. THE LANGUAGE OF THE POLICY IS NOT AMBIGUOUS

The Court turns to the first step of California's three-step analysis, an examination of the policy's language in the context of an instrument as a whole and given the meaning a layperson would ascribe. The gravamen of the Court's inquiry here is whether the policy language would be

6

ambiguous to a layperson who has actually read the policy.[3] "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1095 (N.D. Cal. 2009) (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)). The Court holds that the policy is not ambiguous and, consequently, that it establishes the untimeliness of the subject claim. The Court rejects Plaintiffs' interpretations of the conditions set forth in sections IX.A, the notice provision, and X.A, the AERP provision, because those interpretations would require the Court to disregard important language in the AERP.

*1. Extrinsic Evidence*

As an initial matter, the Court addresses the substantial quantities of extrinsic evidence offered by the parties and the objections thereto. "In determining if a provision is ambiguous, we consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation. . . . Even apparently clear language may be found to be ambiguous when read in the context of the policy and the circumstances of the case." *Employers Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 919 (2008). However, "[c]ourts will not strain to create an ambiguity where none exists." *World Health*, 612 F. Supp. 2d at 1095 (quoting *Waller*, 11 Cal. 4th at 18-19).

In this case, the Court agrees with Plaintiffs that "neither party's extrinsic evidence is relevant to the objective interpretation of the Policy." Pls. Reply (Dkt. No. 61) at 10. First, the evidence does not directly explain the parties' understanding of the terms of the contract at the time they executed it. The emails between PCCP and its insurance brokers speaks to Plaintiffs' understanding at the end of the policy period, not at its outset. Second, the proffered evidence is unilateral and therefore does not establish a course of conduct between the parties that might shed light on the parties' understanding of the contract's performance requirements. *See* Towle Decl.

---

[3] To be clear, California does not *strictly* presume that insureds are familiar with the terms of their policies; indeed, it affirmatively requires insurers to identify and explain "unusual or unfair language." *See Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1210-11 (Cal. 2004). Additionally, coverage limitations must be "conspicuous, plain, and clear." *Id.* at 1204. Plaintiffs here do not assert unfamiliarity with the policy language, that the AERP is "unusual or unfair," or that it is inconspicuous, so the Court charges Plaintiffs with knowledge of the policy's contents.

7

(Dkt. No. 56) ¶ 3; *see also Employers Reinsurance*, 161 Cal. App. 4th at 920-21 (course of performance exists only where a party has "repeated occasions for performance" and "the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection" (citing Cal. Com. Code § 1303(a))).

Because none of the extrinsic evidence clarifies the terms of the policy, the Court declines to consider it in interpreting the policy. The Court instead confines its inquiry to the policy's four corners.

                2.       *The Policy Language*

Most compelling in this case is the policy language itself. As set forth above, the policy's Insuring Agreements cover claims "first made . . . and reported . . . during the policy period or any applicable Extended Reporting Period." Policy at END_000482. More specifically, Section IX.A requires insureds, "[a]s a condition precedent to coverage," to provide Endurance with written notice of "any Claim made against any Insured as soon as practicable" after the insured "becomes aware" of the claim, "but in no event later than: (1) the expiration date of this Policy [or] (2) the expiration date of the [AERP]." Policy, § IX.A, at END_000476. Here, Plaintiffs did not report the claim prior to the expiration date of the policy and therefore are not entitled to coverage under that provision.

Plaintiffs must argue therefore that they are afforded coverage under the second option, i.e., that they reported the claim before the expiration of the AERP. Plaintiffs posit that, because Section IX.A is disjunctive, a layperson reasonably could conclude that it permitted an insured to provide notice of "*any* Claim made against" an insured at any point up to the end of the AERP, provided it was done "as soon as practicable." *Id.* (emphasis supplied). The AERP provision itself forecloses that reading. The specific terms of the AERP only "apply to Claims *first made against the Insured during the sixty (60) days immediately following* the effective date of [the Policy's] nonrenewal or cancellation, for any Wrongful Act committed *before* the effective date of such nonrenewal or cancellation . . . and otherwise covered by this insurance." Policy, § X.A, at END_000477 (emphasis supplied). The effect of Section X.A's plain language, then, is to provide coverage when a wrongful act occurs during the policy period but the claim based on that wrongful

8

act only materializes in the sixty days after the policy period, provided that the claim is reported within those sixty days.

Plaintiffs' construction is unavailing. They interpret Section IX.A as a complete description of the policy's claims-reporting conditions, and Section X.A as an extension of not only the policy's coverage period, but also the time in which reporting may occur for the initial, one-year coverage period. *See* Pls. MSJ at 9; Pls. Reply at 2. They argue that this interpretation is "reasonable" and that therefore "the Policy is at a minimum ambiguous" and must be construed in favor of coverage. Pls. Reply at 2. Plaintiffs focus on the title of the provision and urge the Court to reject Endurance's competing reading because it would interpret "the 'Automatic Extended *Reporting* Provision' to provide additional coverage, but no extended *reporting*." Pls. MSJ at 11 (emphasis in original); *see also id.* at 10 (offering AERP's caption as confirmation of Plaintiffs' reading of AERP's substance).

Plaintiffs' interpretation is not without some appeal: the labeling of Section X.A as an "Automatic Extended Reporting Period" gives the impression that the AERP's function is nothing more than to extend the reporting period for claims. Further, that impression aligns with what appears to be the legal community's general understanding of what extended reporting periods do. *See*, *e.g.*, *Root v. American Equity Specialty Insurance Co.*, 130 Cal. App. 4th 926, 933 (Cal. Ct. App. 2005) (assuming function of extended reporting period is to give insured "a set amount of extra time to report claims" made within policy period); CAL. PRAC. GUIDE INS. LIT. §§ 7:103-7:104.1 (explaining that claims-made-and-reported policies do not countenance extensions for last-minute claims, but that such policies are valid as a matter of public policy because they allow insurers to offer low premiums; also noting that "insureds may protect themselves [against last-minute claims] by purchasing so-called 'tail coverage' or extended reporting coverage").[4]

The Court agrees with Plaintiffs that the caption of Section X.A, when viewed in isolation, tends to support an interpretation that the AERP allowed reporting of a claim—any claim—within

---

[4] The record before the Court contains no evidence of common industry terms, but even if it did, the Court would still be required to read "the relevant policy terms as a layperson would read them, not as they might be analyzed by an attorney or insurance expert." *Indus. Indem. Co. v. Apple Computer, Inc.*, 79 Cal. App. 4th 817, 831 (Cal. Ct. App. 1999).

its duration. However, it is hornbook law that "how parties label their contract is not determinative of its nature. For instance, calling an agreement a lease does not make it such. Reference must be had to the instrument itself, to a reading and consideration of all its terms, conditions, and covenants, to determine its true character." 14A CAL. JUR. 3d Contracts § 201. In the insurance context specifically, "[t]he caption of an insurance policy or rider may be considered in determining the interpretation to be given to the instrument, although, *where the main body of the policy or rider is explicit and clear, its language will be given effect as against that of the caption*." 39 CAL. JUR. 3d Insurance Contracts § 42 (footnotes omitted, emphasis supplied) (citing *Zimmerman v. Cont'l Life Ins. Co.*, 99 Cal. App. 723, 726 (Cal. Ct. App. 1929); *Coit v. Jefferson Standard Life Ins. Co.*, 28 Cal. 2d 1, 11 (1946)).

Plaintiffs' interpretation of Section X.A is consistent with its caption but not consistent with its body. The substantive language of the provision explicitly extends coverage only to claims "first made" during the AERP. Policy, § X.A, at END_000477. Plaintiffs' proposed interpretation would read this "first made" requirement out of the Policy. It also overlooks the requirement that the claim be first made during the sixty-day period "immediately following" termination of the policy. The Court cannot read Section IX.A in isolation. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Employers Reinsurance*, 161 Cal. App. 4th at 919 ("We consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation."); *see also AIU*, 51 Cal. 3d at 827 (declining to adopt party's interpretation of insurance policy that would strip one of the policy's phrases of independent meaning). The Court must give effect to all the language of the policy where doing so results in no ambiguity. Doing so here, the Court holds that the "first made" language of section X.A means what it says: the AERP covers only those claims "first made" in the sixty-day period immediately following nonrenewal or termination of the policy, and accordingly does not cover claims first made within the policy period.

*World Health* supports Defendant's view that the policy language is unambiguous. In that case, as in this one, an insured had a policy with a sixty-day automatic extended reporting period,

10

though in *World Health* the insured renewed its policy so the extending reporting period was not triggered. 612 F. Supp. 2d at 1095-96. The policy required the insured to provide notice of a lawsuit against it within fifteen days after the claim was first made. *Id.* at 1094. The insured was sued within the policy period but did not report the claim until 24 days after the end of the policy period. *Id.* The insured argued that a lay person reading the extended reporting provision "would not understand that for a claim to be covered under [that] provision, a claim must have been made after the policy expired." *Id.* The court rejected that argument after parsing the black letter of the policy, which closely tracks the policy language here, and finding "no ambiguity." *Id.*

Plaintiffs seek to distinguish *World Health* on the ground that the policy in that case had a fifteen-day reporting requirement for claims arising from lawsuits. Pls. MSJ at 12-13. While true, that does not make *World Health* distinguishable. The case speaks to the lack of ambiguity in the notice provisions within the extended reporting provision, which is unaffected by the fifteen-day reporting requirement.

Because the Court determines that the policy is unambiguous, its analysis proceeds no further. Accordingly, the Court does not consider what Plaintiffs' reasonable expectations were or whether the contra-insurer rule should resolve any ambiguities—which are not present here—against Endurance. The subject policy is unambiguous. The AERP does not apply to the subject claim because it was not "first made" within the AERP. The subject policy does not cover Plaintiffs' claim because that claim was "first made" within the policy period but not reported within that period. Accordingly, the claim is untimely and not covered.

C. **THE NOTICE-PREJUDICE RULE DOES NOT APPLY**

Plaintiffs contend that, if the Court finds their claim was untimely reported, the Court should apply California's notice-prejudice rule and require Endurance to demonstrate actual prejudice stemming from the delay in reporting. Specifically, Plaintiffs posit that a California court "would almost certainly" apply the notice-prejudice rule here because the subject claim falls "squarely within" the risk PCCP underwrote. Pls. MSJ at 15. The Court rejects that argument. It is undisputed that the policy at issue here is a claims-made-and-reported policy. The leading California case, *Root*, expressly rejects application of the notice-prejudice rule to claims-made-and-

11

1 reported policies, and it is only one in a line of California cases to do so. *See Root*, 131 Cal. App.
2 4th at 947 (approving cases rejecting notice-prejudice rule for claims-made-and-reported policies).
3 *Root* also raises the possibility of courts giving insureds equitable relief from strict compliance with
4 reporting requirements in "rare" cases, but Plaintiff expressly disavows seeking equitable relief
5 here. Pls. Reply at 7 n.5.

6 The purpose of claims-made-and-reported policies is to allow insurers to "close their books"
7 on a policy by a date certain, and thus be able to price policies more accurately. *See generally Pac.*
8 *Employers Ins. Co. v. Superior Court,* 221 Cal. App. 3d 1348, 1356-59 (Cal. Ct. App. 1990); *Root*,
9 131 Cal. App. 4th at 944-47. Plaintiffs argue that, in this case, extending coverage under the AERP
10 does nothing to prevent Endurance from closing its books on the subject policy by a date certain;
11 the date is simply moved sixty days out past the end of the policy period. Thus, according to
12 Plaintiffs, a California court would apply the notice-prejudice rule in this case, notwithstanding the
13 subject policy being of the claims-made-and-reported type.

14 That position cannot be reconciled with *Root*. Under Plaintiffs' view of the law, *every*
15 claims-made-and-reported policy would be subject to the notice-prejudice rule, because in every
16 instance the insurer of a claims-made-and-reported policy could close its books at the end of the
17 policy period or, if provided, any extension periods. In every claims-made-and-reported policy,
18 then, the policy's reporting condition would be mere surplusage, and the claims-made-and-reported
19 policy would be "convert[ed] . . . into a pure claims made policy," thereby "giv[ing] the insured a
20 better policy than he paid for." *Root*, 130 Cal. App. 4th at 947. *Root*'s rationale is dispositive
21 here.[5] The notice-prejudice rule is inapplicable in this case because the subject policy is
22 undisputedly a claims-made-and-reported policy.

23 **IV. CONCLUSION**

24 The claim at issue was made against Plaintiffs during the policy period but only reported
25 after the policy period expired. Because the Court holds that the subject policy unambiguously

---

[5] In light of this direct California authority, the Court declines to follow two nonbinding authorities applying Texas law cited by Plaintiffs. Pls. MSJ at 16 (citing *Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*, 684 F. Supp. 2d 330, 342 (S.D.N.Y. 2010) (applying Texas law); *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 382 (Tex. 2009) (same)).

12

covers claims made during the policy period only if they are also reported within the policy period, the undisputed facts entitle Defendant to judgment as a matter of law. The Court **GRANTS** the motion for summary judgment of Defendant Endurance American Specialty Insurance Company and **DENIES** the motion for summary judgment of Plaintiffs PCCP, LLC and Redwood Capital Finance Company, LLC.

Not more than seven (7) business days from the signature date of this Order, Defendant shall file a proposed form of Judgment after having sought Plaintiffs' agreement as to form.

All trial-related dates are hereby **VACATED**.

This Order terminates Docket Nos. 52 and 54.

**IT IS SO ORDERED**.

Dated: August 13, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**